IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIE CARL HOLLIS, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | |
| } | 2:12-cv-04006-WMA |
| ONEWEST BANK, FSB } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant Onewest Bank, FSB ("OWB") to dismiss, or in the alternative, for summary judgment. The court is treating it as a motion for summary judgment. Doc. 6. Willie Carl Hollis ("Hollis") instituted the above-entitled action against OWB alleging breach of contract, wrongful foreclosure, negligence and wantonness. For the reasons set forth below, OWB's motion for summary judgment will be granted.

**Facts**[1]

On or about November 7, 2007, Hollis executed a mortgage ("the mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") solely as nominee for IndyMac Bank, F.S.B. ("IndyMac"). The mortgage covered property at 5736 Willow Lake Drive, Birmingham, Alabama, 35244 ("the property"). At some point

---

[1] Because of the procedural posture, all admissible evidence is viewed in the light most favorable to Hollis.

after the origination of the mortgage and before September 1, 2010, IndyMac was acquired by OWB and became its wholly owned subsidiary.

On September 1, 2010, Indymac as a subsidiary of OWB, sent Hollis a letter informing him that he was in default for failure to make payments on his loan. See Doc. 4-2. The letter stated that in order to cure his default, he must pay $18,096.59 on or before October 3, 2010 to IndyMac as a division of OWB. The letter also stated "[i]f you do not cure your default, we will accelerate your mortgage with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time." *See* Id. Hollis did not make any payments following this letter. On November 10, 2010 an assignment of mortgage to OWB was executed and one week later was recorded in the Probate Court of Jefferson County. Ala. Code § 35-4-62(b) allowed effective recordation involving real property located in the Bessemer Division of Jefferson County, as the subject real property is, to be recorded either in the Birmingham Division of Jefferson County or the Bessemer Division.

On December 21, 2010, Hollis filed a voluntary petition for Chapter 7 bankruptcy in the Bankruptcy Court for the Northern District of Alabama. *See In re Hollis*, case no. 10-07475. Hollis was discharged on March 29, 2011. Hollis then, on April 8, 2011, filed a voluntary petition for Chapter 13 bankruptcy. *See In re Hollis*, Bankruptcy Court for the Northern District of Alabama case no. 11-01991. This case was dismissed on May 23, 2011.

On June 29, 2011, OWB sent Hollis a notice of acceleration of the mortgage and note informing him that because he had not cured his default, OWB was accelerating to maturity the entire remaining unpaid balance of the debt. It also informed him if he did not pay this amount, OWB would hold a foreclosure sale on August 1, 2011. Hollis did not make any payments, and OWB followed through with the August 1 foreclosure sale in front of the Bessemer Courthouse. Federal National Mortgage Association ("Fannie Mae") was the highest bidder at the sale and became the new owner of the property.

On August 15, 2011, Fannie Mae brought an ejectment action against Hollis in the Circuit Court of Jefferson County, Bessemer Division. *See Federal National Mortgage Association v. Hollis*, cv-11-900477. On June 19, 2012, Fannie Mae prevailed on its motion for summary judgment and was awarded full title to and possession of the property. Hollis was ordered to restore immediate possession to Fannie Mae. Hollis did not appeal the state court order.

On October 19, 2012, Hollis filed the above-entitled action in the Circuit Court of Jefferson County, Bessemer Division. He alleged that OWB failed to notify him before accelerating his loan, and that OWB's actions were negligent, wanton, in breach of their contract, and resulted in a wrongful foreclosure. OWB properly removed the action to this court on December 3, 2012.

## Analysis

As stated above, the basis of Hollis's complaint is that OWB

did not notify him before accelerating his loan. He alleges four separate counts–breach of contract, wrongful foreclosure, wantonness, and negligence. All are based on OWB's alleged failure to notify. His complaint states:

> Per the terms of the mortgage, Defendant, as Lender, had a duty to give Hollis notice in writing at least 30 days prior to acceleration of the promissory note. Said notice is required to specify the default; the action required to cure the default; a date, not less than 30 days from the date the notice is given to the borrower, by which the default must be cured; and that failure to cure the default on or before the date specified in the notice may result in acceleration of the note secured by the mortgage and sale of the property. . . . Hollis never received said notice from Defendant of the Lender's intent to accelerate. . . . Defendant accelerated the debt without the notice required in the contract between the parties, and subsequently foreclosed on Hollis's property.

Complaint ¶ 15-17. However, OWB has responded to these allegations with undisputed proof that it did in fact notify Hollis exactly as the agreement required. OWB also points out that the mortgage states "[a]ny notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail. . . ." Doc. 4 citing Ex A-1 at ¶15. OWB's letters show that they were mailed first class. Hollis does not challenge any of this; therefore, OWB has established that there are no disputes of material fact regarding the actions OWB took to comply with the contract.

However, Hollis interjects a new argument that goes beyond the contract's explicit requirements and the allegations in the

complaint. He departs from the stance he took in his complaint, that notice of default was not given, and now argues that acceleration did not take place within a reasonable time after default because nearly 10 months passed between the notice of default and the notice of acceleration.

> The pronounced passage of time . . . between the date of the Notice of Default given prior to Defendant's interest in the Mortgage and the delayed election by Defendant to accelerate said Note and initiate foreclosure, rendered the September 1, 2010 Notice untimely and outdated.

Doc. 6 at page 2. He cites no provision in the contract that requires acceleration to occur within a reasonable time of notice, understandably because there is no such provision in the contract. The contract's only time requirement is that the notice of default must specify "a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured." Doc. 4-1 at ¶ 22. OWB met this time requirement and thus met the requirements of the contract. The contract is unambiguous; therefore, there is no need to look outside of it to determine whether OWB complied with it.

Hollis quotes an Alabama Supreme Court case that he claims requires the court to look beyond the contract's written requirements. The court there said "the election of the holder to declare the acceleration of the due date of the whole debt must be exercised within a reasonable time after default." *McJenkin v. Central Bank of Tuscaloosa, N.A.*, 417 So. 2d 153, 157 (Ala. 1982).

However, *McJenkin* involves a completely different situation. Mr. McJenkin and Mrs. McJenkin obtained a divorce, whereupon he conveyed all of his rights in the property to her. She then made payments for 18 months until the bank, without notice, accelerated the loan under the due-on-sale clause, based on the prior transfer from Mr. McJenkin to Mrs. McJenkin.  These facts are quite different from those currently before the court. *McJenkin* involves a default, 18 months of accepted payments, and then acceleration without notice. On the other hand, the instant case involves notice of default, notice of acceleration and a passage of only 10 months in between the two. Furthermore, the quoted statement is just dicta. The court's actual holding involves reversing a trial court's refusal to grant a TRO on other grounds.[2]

Even if this court should read a reasonable time requirement into the contract's acceleration provisions, Hollis has not shown that OWB acted unreasonably. Hollis has not presented any case law that a 10 month lapse between notice and acceleration is unreasonable. However, even if he had shown that a passage of 10 months was unreasonable, other circumstances that were not the fault of OWB prolonged the time between default and acceleration. OWB sent its first notice of default on September 1, 2010. As per

---

[2] Hollis and the Alabama Supreme Court also cite a Colorado case. *See Malouff v. Midland Federal Savings and Loan Association,* 509 P. 2d 1240 (1973). Unlike the Alabama Supreme Court case, the Colorado Supreme Court actually held that acceleration must be a reasonable time after default. However, not only is it not controlling precedent, but it is also not very informative to the analysis at hand. The case dealt with an election to accelerate that was made within a month after notice, and the court found that it was reasonable. *Id*. at 1246.

the requirements in the mortgage, OWB had to allow Hollis 30 days to cure this default. Therefore, the letter stated that he had until October 3, 2010 to cure the default. He did not make any payments; therefore, OWB was allowed to accelerate the loan on October 3, but did not do so immediately. Eleven weeks after the first day OWB could accelerate, Hollis filed Chapter 7 bankruptcy. The bankruptcy's automatic stay prevented OWB from attempting to collect any debt from Hollis while he was in bankruptcy. Hollis was discharged from bankruptcy on March 29, 2011, but then filed another voluntary petition, this time for Chapter 13 bankruptcy, just nine days later on April 8, 2011. Again, OWB could not accelerate the loan while Hollis was in bankruptcy. Hollis's Chapter 13 bankruptcy proceeding was dismissed on May 23, 2011. Just over a month later on June 29, 2011, OWB sent Hollis a notice of acceleration of the loan. Hollis did not cure the default, so OWB followed through with foreclosure proceedings as promised. Therefore, when considering all of the circumstances, it is not as if ten months passed during which OWB sat on its ability to accelerate while it deteriorated to nothingness. The time during which OWB could accelerate but did not is as follows: eleven weeks before the first bankruptcy, nine days between the chapter 7 bankruptcy and the chapter 13 bankruptcy, and five weeks after the second bankruptcy discharge. The only case law that Hollis cites in which there is an actual holding regarding the reasonableness of a specific time says that a month is reasonable. *See Malouff v.*

*Midland Federal Savings and Loan Association,* 509 P. 2d 1240 (Colo. 1973). This does not show that what OWB did was unreasonable. Furthermore, it is Hollis's own actions–filing for bankruptcy twice–that delayed OWB's ability to accelerate. "Those who seek equity must do equity." *Levine v. Levine,* 80 So. 2d 235. (Ala. 1955). Based on all of the circumstances, OWB did not act unreasonably when it accelerated Hollis's loan.

There are no disputed material facts in this case. OWB has disproved Hollis's allegations that he was not notified of his default prior to acceleration, leaving the reasonableness of OWB's actions as the only possible issue. Based on the totality of the circumstances, OWB acted reasonably. Because there are no disputed material facts and OWB did not act unreasonably as a matter of law, OWB's motion for summary judgment is due to be granted.

OWB also contends that the issue Hollis wants to present has already been litigated by Fannie Mae in the state court ejectment case in which Fannie Mae prevailed on June 19, 2012. It is not necessary to analyze whether this is correct because the case is due to be dismissed on grounds previously discussed.

For the foregoing reasons, OWB's motion for summary judgment will be granted by separate order.

Done this 15th day of February.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE